Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 5913 | **DATE** | 6/21/2011 |
| **CASE TITLE** | Merced Rojas vs. Town of Cicero, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons explained in the Statement section of this order, plaintiff Merced Rojas's ("Rojas") "Motion for Reconsideration of this Court's Order (Docket #335) Regarding *Monell* Liability" [392] is granted. The court will permit Rojas to present evidence related to the Town's *Monell* liability based on either a widespread practice or final policymaker theory of liability. Because the identification of the final policymaker is a question of law for the court, the court will make its ruling on whether President Larry Dominick was a final policymaker after the jury reaches its verdict.

■[ For further details see text below.]   Notices mailed.

## STATEMENT

     On November 16, 2010, Rojas filed a "Motion for Finding as a Matter of Law" (Dkt. No. 235), asking this court to find as a matter of law that defendant President Larry Dominick ("President Dominick") "had policy making authority for the termination of Plaintiff Rojas and acted under color of law in making such decision." (Dkt. No. 235 at 1.) This court granted Rojas's motion in part to the extent that it asked the court to make such a determination but ultimately concluded that President Dominick was not a final policymaker based on the limitations of his authority imposed by certain Town of Cicero ("Town") ordinances. (Dkt. No. 335.) Because Rojas had not identified another theory of *Monell* liability in his pre-trial submissions nor proposed any *Monell* jury instructions in the parties' Proposed Pretrial Order, the court removed Rojas's claim against the Town from its Proposed Verdict Form. (*See* Dkt. No. 343.)

     Rojas originally did not file a motion for reconsideration of this court's determination regarding the *Monell* claim against the Town. Instead, he raised the issue in his reply brief in support of his motion for reconsideration of this court's ruling that defendants President Dominick and the Town (collectively "Defendants") had qualified immunity with respect to Rojas's First Amendment familial association claim. (Dkt. No. 385.) Despite not having filed a motion for reconsideration on the *Monell* issue, on April 4, 2011, Rojas proceeded to file a "Motion to Supplement Reconsideration of this Court's Order of November 29, 2010 (Docket #335) with Recent Seventh Circuit Authority." (Dkt. No. 388.) During the hearing on that motion, the court granted Rojas's motion to supplement but explained to Rojas's counsel that a motion for reconsideration of the *Monell* order had never been filed. (*See* Dkt. No. 391.) On April 21, 2011, Rojas filed his "Motion for Reconsideration of this Court's Order (Docket #335) Regarding *Monell* Liability" (Dkt. No. 392 ("Rojas's Mot.")), which included over 250 pages of exhibits.

     Federal Rule of Civil Procedure 54(b) permits district courts to revise "any order or other decision,

however designated, that adjudicates fewer than all the claims . . . at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b). "The authority of a district judge to reconsider a previous ruling in the same litigation . . . is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006); *see also Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) ("The court [has] broad discretion to revisit its interlocutory orders . . . ." (citing *Santamarina*, 557 F.3d at 571)). Having had an opportunity to more thoroughly review the relevant legal authority, the court agrees that reconsideration of its previous finding that Rojas could not pursue his *Monell* claim against the Town is warranted.

Under *Monell*, a municipality may be liable for a violation of a plaintiff's constitutional rights if the alleged violation was caused by "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Rojas argues that in this case the Town may be liable under either the second or third *Monell* theories of liability. The court will address each theory in turn.

First, regarding whether President Dominick was a final policymaker, the Seventh Circuit's decision in *Valentino v. South Chicago Heights*, 575 F.3d 664 (7th Cir. 2009), is instructive. In *Valentino*, the court explained that

> [h]elpful in determining whether an official is a final decisionmaker is an inquiry into: (1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (2) "whether the policy decision purportedly made by the official is within the realm of the official's grant of authority."

*Id.* at 676 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995)). The court in *Valentino* further noted that "[a]lso helpful is an examination of not only 'positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law.'" *Id.* (quoting *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989)). Additionally, this inquiry focuses not on "whether an official is a policymaker on all matters for the municipality, but [rather on] whether he is a policymaker 'in a particular area, or on a particular issue.'" *Id.* (quoting *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 738 (7th Cir. 1999)).

In its order finding that President Dominick was not a final policymaker with respect to employment issues, this court relied on § 2-96(b) of the Cicero Municipal Code, which provides: "The personnel director in addition to the town attorney and the town president is empowered to adopt and issue personnel rules." Determining that, based on this ordinance, President Dominick "could not have alone undertaken to set official employment policies on behalf of the Town of Cicero," this court concluded that President Dominick "was not a final policymaker for purposes of the Town's potential *Monell* liability." (Dkt. No. 335.) *See also Wragg v. Vill. of Thornton*, 604 F.3d 464, 469 (7th Cir. 2010) ("As to the board of trustees, we agree with the district court that there can be no municipal liability for the isolated acts of only one member of a multi-member board.").

Nevertheless, as explained in *Valentino*, the Town's "ordinances, rules and regulations" are not necessarily dispositive. Instead, evidence of the Town's "customs and practices" is also relevant. In *Valentino*, for example, the court noted that "all of the evidence suggest[ed] that Mayor Owen had the

unfettered discretion to hire and fire whomever he pleased" in finding that Mayor Owen was the de facto policymaker with respect to personnel decisions in his office. *Valentino*, 575 F.3d at 677-78. Specifically, the court in *Valentino* explained that

> [g]iven that the Village has a population of only a few thousand people and is run by a small government, a legislative framework for personnel decisions may not actually exist, and Defendants have not provided evidence of any. Rather, the evidence suggests that as head of the government, Mayor Owen may hire or fire whomever he wants in the routine course of business. Therefore, in this case, . . . given that there is no presumption of policymaking authority in the hands of any quasi-legislative body, it is unnecessary for there to be any factual inquiry into whether that body delegated its authority to Mayor Owen. To the contrary, given Mayor Owen's preference to hire his relatives and campaign supporters to government jobs, it appears to be a Village custom/practice to allow Owen to set whatever hiring/firing criteria he sees fit.

*Id.* at 678.

In this case, unlike *Valentino*, the evidence does not undisputably demonstrate that President Dominick possessed final policymaking authority with respect to personnel issues. As this court previously found, under the court's interpretation of the relevant Town ordinance, President Dominick is only authorized to adopt personnel policies in coordination with both the Town attorney and the Town personnel director. Additionally, President Dominick testified during his deposition that policy recommendations would also need to be approved by the Town's board and that the "Town Board at the end is the vote" with respect to hiring decisions. (L. Dominick Dep. 59:15-21; 69:22-71:14 (attached as Ex. C to Dkt. No. 402).) On the other hand, Derek Dominick, the Town's Human Resource Director, testified during his deposition that President Dominick had the authority to suspend and fire employees but he, Derek Dominick, did not. (D. Dominick Dep. 19:10-23 (attached as Ex. 4 to Rojas's Mot.).) Based on the record currently before the court, whether President Dominick possessed final policymaking authority with respect to the Town's employment issues appears to involve factual disputes inappropriate for a resolution based solely on the parties' submissions.

Rojas argues that if this court is unable to find that President Dominick was a policymaker as a matter of law, whether he had final policymaking authority is a question of fact for the jury. (Rojas's Mot. 2.) Based on the court's research, however, whether President Dominick had final policymaking authority is a question of law for the court, not the jury, even if the ultimate determination involves factual issues.

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the U.S. Supreme Court explained that the identification of the final policymaker is question for the trial judge, not the jury:

> [T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury. Reviewing the relevant legal materials, including state and local positive law, as well [as] "custom or usage" having the force of law, the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue . . . .

| STATEMENT |
|---|

*Id.* at 737 (emphasis in original) (internal citations omitted). Interpreting this excerpt from *Jett*, the Eleventh Circuit in *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989), explained that "[a]lthough identification of the policymaker may often involve fact-sensitive inquiries, the Supreme Court has determined as a matter of policy that courts, and not juries, are to make this decision." *Id.* at 793. Similarly, in *McGee v. Bauer*, 956 F.2d 730, 733 (7th Cir. 1992), the Seventh Circuit relied on *Jett* in instructing that "whether a local official is a policymaker is a question of law to be decided by the trial judge before the case is submitted to a jury. *The district court therefore should not have let the policymaker question go to the jury*." (emphasis added).

Rojas relies on *Kujawski* as support for his position that the jury should address any underlying factual disputes. Although the Seventh Circuit in *Kujawski* found that a genuine issue of material fact precluded an award of summary judgment on plaintiff's *Monell* claim and remanded the case "to the district court for further proceedings," the Seventh Circuit panel in *Kujawski* did not explicitly explain whether the factual dispute should be resolved by the court or by the jury. The *Kujawski* opinion, however, did recognize that under *Jett*, the determination of a person's status as a final policymaker "is a question of state or local law" and that "the trial judge must identify those officials or governmental bodies who speak with final policy making authority." 183 F.3d at 737.

Applying *Jett*, *McGee,* and *Kujawski*, and further guided by the Eleventh Circuit's decision in *Mandel*, this court finds that it–and not the jury–must determine whether President Dominick had final policymaking authority for the Town with respect to employment decisions, even if that determination involves disputed questions of fact. This issue, however, was never presented to the court on summary judgment and, as a result, the court has not had the benefit of reviewing Local Rule 56.1 statements outlining the relevant facts, whether those facts are disputed, and the supporting evidence to assist the court in making this determination. Nor have the parties submitted statements of material fact in connection with the briefing on Rojas's motion for reconsideration.

To avoid further delay in the resolution of Rojas's claims, the court intends to instruct the jury to assume that President Dominick was a final policymaker for purposes of assessing the Town's liability under *Monell*. The court will reserve its final determination on President Dominick's policymaker status until after the trial. If necessary, the court at that time may request that the parties submit to the court further material related to the legal issue of whether President Dominick was a final policymaker.

Regarding the Town's *Monell* liability based on a widespread practice–another issue the Town did not address in its motion for summary judgment (*see* Dkt. No. 116)–the court will allow Rojas to pursue this theory of liability at trial. Although Rojas originally did not submit any jury instructions on the Town's liability under *Monell* based on a widespread practice in the parties' Proposed Pretrial Order, Rojas has moved to supplement its jury instructions with instructions related to the Town's *Monell* liability based on that theory (Dkt. No. 396), and also persistently argued both during the November 2010 pre-trial conference and in his subsequent submissions to the court that the Town may be liable under that theory (*see* Dkt. No. 385, 388, 392). Moreover, in its response to Rojas's motion for reconsideration on the *Monell* issue, the Town does not argue that it would be prejudiced by allowing Rojas to present a widespread practice theory to the jury at trial. (*See* Dkt. No. 400.) The court accordingly will provide an appropriate instruction to the jury regarding the Town's liability under *Monell*'s widespread practice theory.

The court emphasizes that during the trial, Rojas will not be allowed to present evidence to the jury through witnesses or exhibits that were not previously disclosed in the parties' Proposed Pretrial Order unless there is an agreement of the parties and the court or unless there is a showing, outside the jury's presence,

*James F. Holderman* (signature)

| STATEMENT |
|---|
| that the exclusion of such evidence would result in "manifest injustice." (*See* Proposed Pretrial Order ¶ 8 ("This Order will control the course of the trial and may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.").) |