# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 5913 | **DATE** | 12/22/2011 |
| **CASE TITLE** | Merced Rojas vs. Town of Cicero and Larry Dominick | | |

**DOCKET ENTRY TEXT**

For the reasons listed in the Statement section of the order, plaintiff Merced Rojas's "Motion for a New Trial on Plaintiff's Equal Protection Claim of Race Discrimination Only" [490] is denied, Defendants' "Renewed Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b)" [486] is denied, and "Defendants' Motion for a New Trial Pursuant [to] F. R. Civ. P. 59(a) and Relief from Judgment Pursuant [to] F. R. Civ. P. 60(b) [488] is granted. A new trial is granted on only Rojas's claim under 42 U.S.C. § 1983 of retaliation for political affiliation. A new trial is set to begin on 4/23/12 at 9:00 AM, and a final pretrial conference will be held at 4:00 pm on 4/17/12 . "Defendants' Motion for Remittitur Pursuant to Rule 59(e)" [491], "Plaintiff's Post-Trial Motion for Reinstatement" [492], and Rojas's "Motion for Instructions Pursuant to ILND LR 54.3(g)" [499] are denied as moot.

■[ For further details see text below.]   Docketing to mail notices.

# STATEMENT

Plaintiff Merced Rojas was fired from his job as a handyman for senior citizens living in the Town of Cicero on October 16, 2006. Rojas brought suit alleging that the Town and Larry Dominick, the Town's president, are liable under 42 U.S.C. § 1983 because Dominick fired Rojas on account of Rojas's support for Dominick's political opponents and because Rojas is Hispanic. At the close of Rojas's case-in-chief at trial, the defendants moved for judgment as a matter of law, which the court took under advisement. On July 14, 2011, a jury awarded Rojas $300,000 in compensatory damages and $350,000 in punitive damages on his claim of retaliation for political affiliation, but found for the defendants on Rojas's claim of race discrimination. The defendants have now renewed their motion for judgment as matter of law (Dkt. No. 486), or, in the alternative, for a new trial (Dkt. No. 488.), on the claim of retaliation for political affiliation. The plaintiffs have also moved for a new trial on the claim of race discrimination. (Dkt. No. 490.)

I.  Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000) (quoting Fed. R. Civ. P. 50(a)). In performing this analysis, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Waite v. Bd. of Trs.*, 408 F.3d 339, 343 (7th Cir. 2005). The court "will overturn a jury verdict . . . only if [it] conclude[s] that no rational jury could have found for [the nonmovant]." *Id.* (citation omitted). Based on the deference afforded to the jury's verdict, the Rule 50 standard "is obviously a difficult standard to meet." *Id.*; *see also Sheehan v. Donlen Corp.*, 173 F.3d

| STATEMENT |
|---|

1039, 1043 (7th Cir. 1999) ("Attacking a jury verdict is a hard row to hoe.").

Rojas bases his First Amendment claim for political retaliation on the allegation that he was fired because Rojas, his wife, and her family withdrew their political support from Larry Dominick. "The First Amendment prohibits a state employer from terminating the employment of a worker on the basis of [his] political beliefs unless political affiliation is an appropriate requirement for the position." *Moss v. Martin*, 614 F.3d 707, 710 (7th Cir. 2010). Here, the defendants contend that the jury's verdict was not rational because there was over a year between the time that Rojas withdrew his political support from Dominick and the time when he was fired, so there is no rational connection between the two events. *See Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (finding that a period of four months is too long to support a reasonable inference of causation). Rojas submitted evidence, however, that he and his family continued to engage in protected activity by opposing Dominick politically during the months leading up to Rojas's firing. A reasonable jury thus could have found that his firing was caused by his family's continued political activity against Dominick.

The defendants cite *Roger Whitmore's Automotive Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 669 (7th Cir. 2005), a case in which the court considered the withdrawal of political support from the defendant as the key event for the purposes of determining whether political motivations caused a later adverse employment action. In *Roger Whitmore's Automotive Services*, however, the plaintiff did not continue his political activity past the end of the defendant's primary campaign a few months thereafter, instead reverting to support the defendant and even making a contribution to him for the general election. *Id.* at 665. By contrast, Rojas and his family continued to oppose Dominick right up to the time when Rojas was fired, thus allowing a reasonable jury to infer that the two events were related.

The defendants also contend that there is no evidence that Dominick's firing of Rojas was motivated by Rojas's political actions. Rojas presented evidence that in the months leading up to the firing, Dominick made statements such as that Rojas's in-laws were idiots, that they were no longer welcome in his organization, that they could go to hell, and that they were shit on the bottom of his shoe. (TT 622:4-15.) Rojas also presented evidence that Dominick said Rojas's wife was lucky that Dominick did not fire her husband (TT 629:10-16). Rojas also presented evidence that Dominick stated that Rojas's wife did not know who the father of her children were (TT 625:19-626:2). As the defendants point out, these comments do not state that Dominick decided to fire Rojas because of his political activity. Nonetheless, a reasonable jury considering the context of the ongoing political feud between Dominick and Rojas's family could have concluded that Dominick's comments and the firing were motivated by Dominick's political animus against Rojas.

Finally, the defendants point out that they offered evidence that Dominick fired Rojas because of the recommendation of a report that Rojas provided repair services for a non-senior's private home while on Town time. Rojas presented evidence, however, casting doubt on the thoroughness of the investigation. *See, e.g.*, TT 1192:22-1193:12 (testimony that the person for whom Rojas was alleged to provide private repair services when he was on town time was not interviewed as part of the investigation). Moreover, there was testimony that Rojas performed the private, non-senior repair job on his own time, and not while working for the Town. TT118:15-119:7. A reasonable jury could have believed that testimony, discredited the report's findings, and found that the report was merely a pretext for firing Rojas. The defendants' motion for judgment as a matter of law is denied.

II. Defendants' Motion for a New Trial on the Claim of Political Retaliation

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new trial in an action in which there has been a trial by jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R.Civ. P. 59(a). In practice, new trials have been granted if the verdict is against the clear weight of the evidence or if the trial was unfair to the moving party. *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003). However, the jury's verdict should be given considerable deference. *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995). "To obtain a new trial on attorney

misconduct grounds, the defendants must show both that misconduct occurred and that it prejudiced their case." *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002).

Here, plaintiff's attorney Dana Kurtz engaged in a repeated pattern of misconduct, starting with inappropriate comments in her opening statement and repeated attempts to introduce inadmissible and prejudicial evidence before the jury that, taken together, prejudiced the defendants' case on the political retaliation claim. First, for example, Kurtz told the jury in her opening statement that Rojas's car was repossessed and his house foreclosed upon because of the defendants' conduct. TT16:22-17:1 The court later determined that Rojas immediately got the car back, and that he had the money to pay his mortgage, so that these events had no connection to the lawsuit. TT144-45, 172, 176-78. Nonetheless, Rojas later stated unresponsively before the jury that he had lost his car and house, thus creating improper prejudicial additional sympathy for himself and perhaps inflating his damages. TT171:12-13.

Second, despite a dispute over the admissibility of testimony about Dominick lying on an employment application, Kurtz questioned Dominick on the topic in front of the jury before bringing the issue up in a sidebar. TT 434:25-435:9. Later, despite a previous admonishment from the court not to present potentially inadmissible evidence to the jury, TT437:5-8, Kurtz asked Dominick if he had told a witness to lie in response to receiving a subpoena, when there was no good faith basis for that question. TT438:10-17l; 662:12-15; 708-10. Despite the court's ongoing admonishment, Kurtz later again asked an inappropriate question when she asked Dominick if he told a Town trustee that he was "going to have Mercy Rojas set up," another question with no good faith basis. TT541:19-20; 680:23-682:17. All of these questions impugned Dominick's credibility, and the latter two drew no corrective instruction from the court. Because the defendants' case depended in large part on Dominick's testimony that he had no improper motive when firing Rojas, Kurtz's inappropriate attacks on his credibility were highly prejudicial and likely swayed the jury's verdict.

Third, Kurtz asked questions of Rojas's wife that led her to volunteer unresponsive hearsay evidence that Dominick had wanted to fire her husband. TT1682-87. Her conduct was an attempt to taint the jury by introducing inadmissible evidence regarding the central issue in the case. Although there was a corrective instruction by the court informing the jury not to consider the testimony, the lingering effect was further prejudice to the defense.

Finally, Kurtz repeatedly argued with the court over evidentiary rulings, despite the court's admonitions to refrain from doing so. TT 100:19-101:10; 171:9-20; 182:9-23; 555:15-556:11; 1226:9-1228:24; 1536:13-24. In so doing, she made legal arguments restating facts that the court had excluded from consideration by the jury, thus further tainting the jury with evidence that should have been excluded. That behavior by Rojas's counsel Kurtz was inappropriate, and constituted further prejudice to the defendants' case. Taken together, all of these acts of misconduct were highly prejudicial to the defendants. Consequently, the court determines that a new trial without the unfair prejudice created by Rojas's counsel regarding Rojas's claim of political retaliation is appropriate.

III.     Rojas's Motion for a New Trial on His Claim of Race Discrimination.

Rojas has moved for a new trial on his claim of race discrimination. Rojas's motion contends that he was denied a fair trial because the court improperly excluded certain evidence that Rojas contends is relevant to his claim. The court, however, has reviewed its evidentiary rulings and finds that Rojas's arguments are without merit.

Rojas also contends that the trial was unfair because of two errors in the jury instruction on the race discrimination claim. First, Rojas contends that it was error to instruct the jury that it needed to find that Rojas was terminated "by Defendant Larry Dominick," rather than that Dominick was merely involved in Rojas's firing. That argument is without merit, however, because Dominick had the ultimate authority to fire Town employees. *See* TT488:23-489:8. The jury would have understood that Dominick was responsible for the decision to fire Rojas, so the instruction is correct. Moreover, the instruction tracks the Seventh Circuit Pattern

| STATEMENT |
|---|

Instruction. *Federal Jury Instructions: Seventh Circuit, Civil Cases* 3.01 (2010).

     Second, Rojas contends that the instructions erred by requiring that race be a but-for cause of Rojas's firing, rather than merely a "motivating factor." Rojas is incorrect. As the Seventh Circuit has noted, until the Supreme Court's decision in *Gross v. FBL Financial Services., Inc.*, 557 U.S. 167 (2009), "plaintiffs could prevail in a First Amendment § 1983 action if they could demonstrate that their speech was a motivating factor in the defendant's decision." *Gunville v. Walker*, 583 F.3d 979, 984 n.1 (7th Cir. 2009). Now, however, "plaintiffs in federal suits must demonstrate but-for causation unless a statute (such as the Civil Rights Act of 1991) provides otherwise." *Id.* Section 1983 does not provide for a motivating factor analysis. *See* 42 U.S.C. § 1983. For these reasons, Rojas's motion for a new trial on his race discrimination claim is denied.

*James F. Holderman*