```
 1                   IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   MERCEDES ROJAS,                    )   Docket No. 08 C 5913
                                        )
 4                  Plaintiff,          )
                                        )
 5         v.                           )   Chicago, Illinois
                                        )   September 19, 2012
 6   TOWN OF CICERO, et al.,            )   9:15 o'clock a.m.
                                        )
 7                  Defendants.         )

 8              TRANSCRIPT OF PROCEEDINGS - STATUS
                BEFORE THE HONORABLE JOHN Z. LEE
 9
     APPEARANCES:
10
     For the Plaintiff:          KURTZ LAW OFFICES, LTD., by
11                               MS. DANA L. KURTZ
                                 32 Blaine
12                               Hinsdale, Illinois 60521

13   For the Defendant:          DEL GALDO LAW GROUP, LLC., by
                                 MS. CYNTHIA SARA GRANDFIELD
14                               1441 South Harlem Avenue
                                 Berwyn, Illinois 60402
15
                                 TOBIN & MUNOZ, LLC., by
16                               MR. TOMAS PETKUS
                                 70 West Madison Street
17                               Suite 1950
                                 Chicago, Illinois 60602
18

19

20
                        ALEXANDRA ROTH, CSR, RPR
21                        Official Court Reporter
                       219 South Dearborn Street
22                             Room 1224
                         Chicago, Illinois 60604
23                          (312) 408-5038

24

25
```

```
 1            (Proceedings had in open court:)
 2            THE CLERK:  08 C 5913, Rojas versus Town of Cicero,
 3   for status.
 4            MS. KURTZ:  Good morning, your Honor.  Dana Kurtz on
 5   behalf of the plaintiff.
 6            MS. GRANDFIELD:  Good morning, your Honor.  Cynthia
 7   Grandfield on behalf of defendant, Town of Cicero.
 8            MR. PETKUS:  Tomas Petkus for Larry Dominick.
 9            THE COURT:  Good morning, counsel.
10            We are here for status.  And previously two motions at
11   least that I want to talk about today have been fully briefed.
12   One is the motion for sanctions.  The other is the motion for
13   deposition of plaintiff and I believe plaintiff's wife.  Is
14   that correct?
15            MR. PETKUS:  Yes.
16            MS. GRANDFIELD:  That's correct.
17            THE COURT:  Okay.  My question with regard to the
18   motion for the additional depositions, I guess I have several
19   questions.  One is that I take it that the motion for
20   depositions will be limited solely to issues related to the
21   bankruptcy proceedings, is that right?
22            MS. GRANDFIELD:  That's correct.
23            MR. PETKUS:  Yes.
24            THE COURT:  What sort of discovery, if any, has been
25   exchanged with regard to the bankruptcy proceedings?
```

```
 1          MR. PETKUS:  None.
 2          MS. GRANDFIELD:  We -- there has been no discovery
 3  that's been exchanged with regard to the bankruptcy proceeding.
 4  Basically defendants were -- after the trial and the additional
 5  disclosure of the foreclosure, the defendants did an additional
 6  search for any other cases in both Cook County and the
 7  bankruptcy court.  And we came across the bankruptcy petition
 8  and all the bankruptcy filings.
 9          So the defendants have whatever was filed in court in
10  their possession.  But they don't have anything additional.  So
11  there has been no discovery exchanged on the bankruptcy.  But
12  that's what we have.
13          THE COURT:  Why do defendants believe that the issue
14  of the bankruptcy -- focusing on this case, okay, why -- and
15  the trial in this case, why do you believe that the bankruptcy
16  issue is relevant to the trial in this case?
17          MS. GRANDFIELD:  Well, we believe that the bankruptcy
18  is relevant to the trial in this case because it goes to what
19  sort of financial hardship Mr. Rojas and his family have
20  encountered as a result of the loss of employment, and how
21  that's related or not related.  For example, in a foreclosure
22  proceeding, we discovered that the mortgage was actually a
23  balloon mortgage.  So that's kind of a question as to if
24  that's -- I mean, it's still of course somewhat related.  If
25  you lose your job, obviously it's going to be more difficult to
```

1   pay your mortgage.  But there also is the issue of the terms of
2   the mortgage that were initially signed on as well.
3           So that's kind of an example that we just need to
4   figure out fully and completely what their financial
5   circumstances are.
6           THE COURT:  Doesn't the fact that Mr. Rojas, based on
7   his allegations, he was wrongfully terminated and then he went
8   through some financial hardship and then he filed bankruptcy,
9   doesn't the bankruptcy filing help the plaintiff's case with
10  regard to those issues?
11          MR. PETKUS:  You would have thought so, Judge.  But it
12  was not disclosed to us.  We have our theories as to why.  But
13  there is also further issues that the bankruptcy proceedings
14  have shed light on.
15          Mr. Rojas misrepresented the type of claim that he had
16  and was able to discharge substantial debts because of
17  statements he apparently made under oath as to what the value
18  of his claim was.  And he claimed it was an exempt under the
19  code following state law for wages.  He filed affidavits with
20  the bankruptcy court concerning his damages.  And there are
21  obviously witnesses, people who know about his damages, that we
22  have not had an opportunity to learn what he said to these
23  people, what his wife said.
24          So in principle, I think, sure, the bankruptcy would
25  be very helpful to them if they can connect up the bankruptcy

1  to his termination, assuming that was wrongfully caused.
2  However, the bankruptcy was not disclosed.  We think it was a
3  strategic decision by the plaintiff not to do so because he
4  would have lost control of the case.
5         The bankruptcy was mid-stream.  There had been
6  settlement negotiations.  The demand that he made in the
7  bankruptcy court for the value of this case, this case would
8  have settled with the trustee.  It would have been over.
9  However, that opportunity was denied us because we were unaware
10 of the bankruptcy.
11        So there are multiple credibility issues on Mr. Rojas
12 and Mrs. Rojas based on written discovery, what they testified
13 to at trial, that is going to be, I think, relevant in the
14 retrial of this case.
15        THE COURT:  Ms. Kurtz?
16        MS. KURTZ:  Where do you want me to start, your Honor?
17        As to Ms. Grandfield's comment about the financial
18 hardship, we did not raise it in the first trial.  We don't
19 intend to raise it in the second trial.
20        As to the legal issues on the bankruptcy --
21        THE COURT:  I am assuming you are going to raise
22 financial hardship in this second trial.
23        MS. KURTZ:  We raised -- so the jury instruction in
24 the first trial, Judge actually included the back pay and front
25 pay in the jury instruction, whereas most Courts do do it where

1 the Judge decides the back pay and front pay, and a jury
2 decides the compensatory damages.
3 So in the first trial, yes, the jury was deciding both
4 back pay, front pay, as well as compensatory damages and
5 punitive damages.
6 Now, whether your Honor in the second trial decides to
7 limit the jury to compensatory damages and your Honor decides
8 back pay and front pay, and that's I think a determination for
9 pretrial in this case.
10 The issue of the financial -- I mean, really so that
11 really was limited to and would be limited to his back pay and
12 front pay. He started his own business trying to do handyman
13 stuff after he was terminated. And also on the compensatory
14 damages, that was limited to emotional distress and
15 humiliation.
16 So I'm not sure how the bankruptcy -- the fact that he
17 filed for bankruptcy doesn't change what his back pay and front
18 pay would have been. So it doesn't really change that picture.
19 And as to emotional distress, we didn't claim that --
20 or raise the bankruptcy as causing -- and I think that's too
21 tangential of a causation that the bankruptcy -- he had to file
22 for bankruptcy. Emotional distress as a result of the
23 bankruptcy would also be -- I mean, we limited to his
24 humiliation and emotional distress as a result of his
25 termination.

1     So as to the financial hardship, I don't think it's
2 relevant that he filed for bankruptcy.  As to the issues that
3 Mr. Petkus raised about misrepresenting the type of claim in
4 bankruptcy, that's just simply not true.  It was listed by case
5 number.  The trustee can pull up the docket just as defense
6 counsel did in the bankruptcy court, and all of the pleadings
7 as well as seeing the complaint and the allegations in the
8 complaint and the specific relief requested in the complaint.
9     The trustee ultimately discharged the debt and the
10 claim was abandoned and reverts back under law to Mr. Rojas.
11 To suggest that they could have settled with the trustee,
12 trustees take all kinds of factors into consideration,
13 including attorneys' fees and the cost to litigate the claim.
14 So the trustee ultimately wanted -- this is discussed in the
15 briefs, would have had to object to the exemption, has 30 days
16 to object, did not object.  So then it's waived.  That's clear
17 law as to the trustee's obligation to object to the exemption.
18     THE COURT:  I think that -- and I have read the
19 briefs, and I understand the parties' positions.
20     I believe that defendants' concern is that it wasn't
21 adequately disclosed to the trustee.  Then placing upon the
22 trustee the burden of objecting to something that he really had
23 no reason to object to might not be considered reasonable.
24     But going back, focusing on whether or not -- on the
25 motion for additional depositions in this case.  I mean, that's

1   what I want to focus on.  Given the fact that you have all the
2   bankruptcy pleadings, why do you need the depositions?
3              MR. PETKUS:  Judge, we don't know what Mr. Rojas said
4   to the trustee to induce the trustee to allow the case to
5   apparently discharge his debts.  There was supposed to be a
6   meeting between Mr. Rojas and Mrs. Rojas, the trustee and the
7   creditors in June.  No one knows what happened, whether that
8   meeting took place, et cetera.
9              Mr. Rojas also clearly knows of witnesses who know
10  about his damages.  We would like to explore why he signed
11  documents under oath stating he was strictly a wage claim.  We
12  like to understand why at the same time the suit was pending he
13  was seeking emotional distress damages, reputational injury
14  damages, and a host of others.  These other things were never
15  disclosed to his creditors.
16             So he obtained a substantial benefit from the
17  discharge of huge debts, which he obtained in part because he
18  didn't -- he wasn't candid with the type of claim, how much
19  money he was seeking.  I think that affects his credibility.
20             The other issue is, even in the first trial, he
21  claimed that the foreclosure proceeding was as a result of
22  wrongful termination.  Well, what we found out later was that
23  he reaffirmed his mortgage debt in the bankruptcy case.  That
24  raises a question of causation, whether it was the termination
25  or whether at the time because he had his business going, he

1   voluntarily reassumed the debt.
2           I don't know if all of these things will ultimately be
3   relevant.  But we were denied an opportunity to explore these
4   to learn about relevant evidence, learn about other witnesses,
5   and really understand the scope of his alleged damages.
6           THE COURT:  Ms. Kurtz --
7           MR. PETKUS:  That's what we are asking allow us to
8   explore.
9           THE COURT:  I mean, why was the bankruptcy not
10  disclosed in response -- in this case, in response to
11  interrogatories?
12          MS. KURTZ:  It wasn't -- one, it wasn't asked
13  specifically.
14          THE COURT:  Didn't they ask for identify all lawsuits,
15  claims and/or grievance?
16          MS. KURTZ:  And lawsuits, there is case law that says
17  it's not a lawsuit.  Two, we weren't going to raise it in the
18  case.  We objected, that we made general objections that other
19  lawsuits were not relevant.  They never had a Rule 37
20  conference.  They never moved to compel or asked the Court to
21  rule on those objections.  It was not our intention, and we did
22  not raise in the case the bankruptcy --
23          THE COURT:  I --
24          MS. KURTZ:  -- issues of damages as to the bankruptcy.
25          The defense counsel brings up the Swearnigen case,

1   which I did handle before Judge Bucklo.  In that case, he
2   did -- it was not disclosed -- the case was not disclosed in
3   any form or fashion.  Cannon-Stokes, the Seventh Circuit case,
4   it's not disclosed in any form or fashion.
5           What the case law says is that you have to give
6   reasonable notice -- some notice to the trustee of the claim.
7   I've seen other petitions in doing research that --
8           THE COURT:  But I'm sorry, not to interrupt you, Ms.
9   Kurtz.  But I'm less concerned about what representations -- at
10  this point what representations were made to the trustee in the
11  bankruptcy.  I'm more concerned about this case and how we're
12  going to try this case.
13          And so I understand your position, and to some extent
14  I believe that's right, that if the information was not
15  requested, then the inquiry as to whether or not plaintiff had
16  an obligation to disclose would be based upon 26(a).
17          However, I think that to contend that bankruptcy
18  petitions and bankruptcy actions do not fall within the general
19  terminology of lawsuits I think is a bit far afield.  They may
20  not be grievances certainly.  Arguably, arguably, if you
21  stretch it they might not even be claims.  But I think that the
22  cases that you cite saying they aren't lawsuits talk about
23  really the differences between bankruptcy proceedings, how
24  those are adjudicated in comparison to civil litigation here in
25  the district court.

1    I also think that the responses themselves by
2 disclosing the 08 C 445 case and then relying upon your
3 objections, I don't think that that provided reasonable notice
4 to defendants that there was something else out there.
5    And so this is what I am going to do: I am going to
6 grant the motion for additional depositions. I am going to
7 limit it strictly to the bankruptcy proceedings. Okay? I am
8 going to limit it two hours each. Okay? And I am going to
9 order that they be done within the next 21 days.
10    MS. GRANDFIELD: Okay.
11    MS. KURTZ: Judge, if I can just on the witnesses
12 issue, I do have a concern because Mr. Petkus raised the issue
13 of witnesses as to what was disclosed on a petition, et cetera.
14 All of that is going to be -- he had a bankruptcy attorney.
15 And as to what the attorney told him and what he told the
16 attorney as to what to list on a petition, obviously that's
17 going to be attorney-client privilege. And he may not know why
18 she listed things.
19    THE COURT: You can only answer what he knows, and the
20 privilege is his that he can waive or not waive. I mean, those
21 are things that the parties can deal with during the
22 deposition. Certainly he doesn't have to speculate or guess as
23 to things that he doesn't know. But to the extent that he has
24 personal knowledge and it is not subject to any cognizable
25 privilege, he needs to answer those questions.

1            And so that's the order.

2            MR. PETKUS:  Your Honor, could we have a little more
3    than 21 days?  I am going to have to have surgery in October.
4    Could we have to the end of October to complete these two
5    depositions, please?

6            THE COURT:  That's fine.  October 31.

7            MR. PETKUS:  Thank you very much, Judge.

8            THE COURT:  The motion for sanctions we are still
9    looking at, and we will issue an order by mail.

10           MS. KURTZ:  Thank you.

11           MS. GRANDFIELD:  Thank you.

12           MR. PETKUS:  Are we to come back at a set -- on a date
13   you want to pick today, or will you just notify us by minute
14   order when you want to see us next?

15           THE COURT:  I guess a couple things.  One is that I
16   don't at this point foresee reopening discovery beyond these
17   two depositions.

18           MS. GRANDFIELD:  Right.

19           THE COURT:  Okay.  So counsel had referred to other
20   potential witnesses, et cetera.  This is it with regard to the
21   bankruptcy.

22           We will schedule a status in mid or late November.

23           THE CLERK:  November 20 at 9:00.

24           THE COURT:  At which point -- I don't believe we have
25   a current trial date -- we will set a trial date and pretrial

1   schedule.

2          MR. PETKUS:  Great.

3          MS. KURTZ:  Thank you, your Honor.

4          THE COURT:  Thank you.

5          MR. PETKUS:  Thanks, Judge.

6      (Which were all the proceedings had at the hearing of the

7       within cause on the day and date hereof.)

8                          CERTIFICATE

9          I HEREBY CERTIFY that the foregoing is a true, correct

10  and complete transcript of the proceedings had at the hearing

11  of the aforementioned cause on the day and date hereof.

12

13   /s/Alexandra Roth                              9/24/2012
    _____      _____
14   Official Court Reporter                        Date
     U.S. District Court
15   Northern District of Illinois
     Eastern Division
16

17

18

19

20

21

22

23

24

25